No. 39,968

Loren Sparks, *Appellee*, v. Guaranty State Bank, Topeka, Kansas, *Appellant*.

(293 P. 2d 1017)

Opinion filed February 29, 1956.

W. *Glenn Hamilton*, of Topeka, argued the cause, and *Floyd A. Sloan, Eldon Sloan* and *James W. Sloan*, all of Topeka, were with him on the briefs for the appellant.

*Robert L. Brock*, of Topeka, argued the cause, and *Edward H. Sondker* and *Richard E. Pringle*, both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action to recover the amount of two checks payable to plaintiff, drawn on defendant bank, which were protested by the bank and never paid. The action is based upon alleged false and fraudulent representations made to plaintiff by an officer of the bank, in reliance upon which plaintiff was induced to forbear the remedies of self-help and legal action then available to him against the maker of the checks, and that as a result thereof the bank received material benefits.

The appeal is from orders of the trial court overruling the bank's motion to strike portions of the petition and its demurrer to the petition.

The petition, which is lengthy and detailed, will not be set out in full, and a brief summary of its allegations will be sufficient to present the question involved.

On July 17, 1952, plaintiff, a resident of Cloud County, sold 217 cases of eggs to the Topeka Packing Company, receiving in payment therefor a check in the amount of $2,604 drawn on defendant

bank. On July 24, 1952, he sold 225 cases of eggs to the same company, receiving in payment therefor a check in the amount of $2,927.60 drawn on defendant bank. The next day he received from the bank a notice that the first of these two checks had been protested. He immediately drove to Topeka in his empty truck, intending to repossess the eggs for which the check had been given, and which he still could have identified. Upon arrival in Topeka he talked with an officer of the bank who, acting in his capacity as such official, represented to and assured plaintiff that the Topeka Packing Company was not in financial difficulty and was solvent; that there was no doubt but that he would be paid the amount of the protested check within a week or two; that the check was the first one given by the company which the bank had protested, and persuaded plaintiff to leave the check with the bank for collection.

As a result of this conversation plaintiff refrained from repossessing the eggs in question and refrained from taking any legal action to recover from the maker thereof the amount of the check.

On the date these representations were made to plaintiff, and for some time prior thereto, the packing company had been in financial difficulties and was in fact insolvent, and the bank had previously protested other checks given by the company for the purchase of eggs. The company was indebted to the bank and through a system of different "types" of checks (all of which is detailed in the petition) the bank received payments on the company's indebtedness to it. During this period the company had a substantial "float" of outstanding checks for which it did not have sufficient funds on deposit with the bank, and all of these facts were known by the bank at the time the representations in question were made to plaintiff.

On August 1, 1952, the bank, under the terms of a note and chattel mortgage executed to it by the company, took possession of 1,227 cases of eggs held by the company and sold them to another party for the sum of $10,688.03. Included in these eggs were the eggs sold by plaintiff, and the bank applied the proceeds to reduce the indebtedness of the company to it. Later the second check, in the amount of $2,927.60, given to plaintiff, was protested.

On August 7, 1952, bankruptcy proceedings were commenced by other parties against the packing company.

In connection with its motion to strike portions of the petition the bank contends that allegations concerning a "custom" between the bank and the packing company with respect to the handling of

checks written by the company are immaterial and irrelevant to the issues presented, and further that some of the allegations sought to be stricken refer to the future rather than to a present or past state of facts, and reliance is had upon *First National Bank v. Mense,* 135 Kan. 143, 10 P. 2d 19, in which it was held that in order to be actionable, false and fraudulent representations must relate to a past or existing fact, and that no action will lie to recover for fraud based upon a failure to perform a promise looking toward the future.

Conceding the correctness of the rule when applied to appropriate facts and circumstances, we think there is no room for its application in the instant case, and neither do we think the trial court erred in refusing to strike allegations concerning the transactions between the bank and the packing company. All were a part and parcel of the entire course of dealing upon which plaintiff based his cause of action, and were directly related to the alleged false and fraudulent representations made by the bank to him.

The bank contends that its demurrer to the petition on the ground that pleading does not state facts sufficient to constitute a cause of action should have been sustained for the reason that it is not alleged that plaintiff parted with any lien or existing right possessed by him, and that the most that can be said of the alleged misrepresentations is that they amounted merely to an expression of opinion rather than statements of fact and therefore are not actionable.

In our opinion the bank's contentions may not be sustained.

Plaintiff alleged that the eggs could have been identified and recovered at the time of the misrepresentations. He left the check with the bank for collection. The bank subsequently received substantial sums from the packing company which were applied on its indebtedness to the bank rather than to pay the check. Under all of the facts alleged it may not be said that plaintiff did not part with existing rights to insist upon and enforce collection.

And neither may it be said that the alleged misrepresentations amounted to nothing more than mere expressions of opinion on the part of the officer of the bank. The petition sets out in detail the fact that notwithstanding the packing company's financial condition, of which the bank was well aware, plaintiff was told untruths concerning the actual state of facts and was assured that he was in no danger of losing the money rightfully due him. Such statements coming from one who was in position to know were not mere expressions of opinion—they amounted to statements of fact.

Much more on the subject could be said but is considered unnecessary, particularly in view of the fact the case has not been tried. As having a bearing on the matters presented, however, we call attention to the following authorities: 37 C. J. S., Fraud, § 48, pp. 302, 303; 23 Am. Jur., Fraud and Deceit, §§ 71, 81, 82, 83 and 89; *Robbins v. Barton,* 50 Kan. 120, 31 Pac. 686; *Discount Co. v. Bank,* 101 Kan. 253, 166 Pac. 476; *Shriver v. National Bank et al.,* 117 Kan. 638, 232 Pac. 1062; *El Dorado Nat'l Bank v. Eikmeier,* 133 Kan. 412, 300 Pac. 1085; *Atlas Acceptance Corp. v. Weber,* 138 Kan. 89, 23 P. 2d 479, and *Olsburg State Bank v. Anderson,* 154 Kan. 511, 119 P. 2d 515.

The orders of the trial court overruling the motion to strike portions of the petition and overruling the demurrer thereto are affirmed.

HARVEY, C. J., not participating.