GEORGE  A.  MacELREE  v.  LILLIAN  WOLFERSBERGER.

No. 10464.

1. PROMISE TO MARRY—*not within statute of frauds if capable of full performance within a year, though no time fixed.*   In a breach of promise case the instruction was given that "If the promise of marriage was to be performed in the future, and no time was specified for the performance of it, and such contract is capable of entire performance within one year from its date, it is not within the Statute of Frauds.   This question does not depend entirely upon the intention or understanding of the parties to the contract, nor upon the fact that the promise was not performed within one year; but if when the contract was made, it was in reality capable of full performance, in good faith within a year, without violating the terms of the contract, or without the intervention of extraordinary circumstances, then it is to be considered as not within the Statute of Frauds, and a valid and binding contract." *Held*, not to be inappropriate or erroneous.

2. ―――― *evidence that after, defendant induced plaintiff to leave her church and join his, admissible.*   In such case testimony that after the marriage contract the defendant induced the

plaintiff to change her church relations and transfer her member-
ship to the church of which he was a member is admissible.

3. AMBIGUOUS ANSWERS TO SPECIAL QUESTIONS—*to be given the
interpretation which will sustain general verdict.* Where the
findings of the jury are susceptible of two interpretations the court
will, if possible, adopt the one which will harmonize them with
and sustain the general verdict.

Error from Harvey District Court.   F. L. Martin,
Judge.   Opinion filed February 5, 1898.   *Affirmed.*

*Peters & Nicholson*, for plaintiff in error.

*Bowman & Bucher*, for defendant in error.

JOHNSTON, J.  This was an action for a breach of
promise of marriage, in which Lillian Wolfersberger
recovered damages from George A. MacElree in the
sum of $3,191.50.   It was alleged, and in fact admit-
ted, that on August 11, 1891, in Pennsylvania, where
both of them resided, the parties entered into a mar-
riage engagement.   The mutual promises were orally
made, and no definite time for the performance was
fixed.   In June, 1892, MacElree left Pennsylvania
and came to Kansas, with a view of finding a location
for the practice of his profession, which was medicine.
Prior to his departure, some talk was had between
the parties, to the effect that he might be absent for
about a year, and that when established in Kansas he
would return and consummate the marriage.   He lo-
cated in Newton, Kansas, and there were frequent
exchanges of letters between them ; the correspond-
ence continuing until January, 1893, when he repudi-
ated the contract.   Shortly afterward he married an-
other.   As a matter of defense, he alleged that he had
not agreed to marry the plaintiff within one year from
the time the contract was made, and that the contract
was not in writing.   He further alleged that her eye-
sight was defective at the time the marriage contract

was made, but he was informed that she would soon recover her sight, but that afterward her eyesight became worse, and her vision was so greatly impaired as to render her unable to perform the ordinary duties of wife and housekeeper, and that he was financially unable to maintain as his wife one so afflicted. Although it was claimed that the contract was renewed in June, 1892, the jury found that the only contract of marriage between the parties was made on August 11, 1891, that it was not in writing, and that it was to be performed at some future and indefinite period.

It is earnestly insisted that the agreement was not enforcible, because not in writing and not to be performed within one year. Under the facts of the case, we think the Statute of Frauds relied on does not defeat the contract nor bar a recovery thereon. Although no definite time was specified within which the contract was to be performed, it is clear that when the contract was made there was no stipulation or understanding that it was not to be performed within a year. The subsequent talk between the parties did not amount to a new contract or to a modification of the one made in August, 1891. The parol contract was capable of full and complete performance within one year. There is nothing to show that the parties intended that the consummation should be long delayed ; but, whatever their hopes and expectations may have been, it does not appear that there was any express agreement or understanding that it should be postponed beyond the period of one year. We think the trial court fairly stated the rule to the jury in the following instruction :

1. Promise not within statute.

" I instruct you further in this same connection that, if the promise of marriage was to be performed in the future, and no time was specified for the performance

of it, and such contract is capable of entire perform-ance within one year from its date, it is not within the Statute of Frauds. This question does not depend entirely upon the intention or understanding of the parties to the contract, nor upon the fact that the promise was not performed within one year; but if, when the contract was made, it was in reality capable of full performance in good faith within a year, with-out violating the terms of the contract, or without the intervention of extraordinary circumstances, then it is to be considered as not within the Statute of Frauds, and a valid and binding contract.''

*Larimer v. Kelley*, 10 Kan. 312; *Sutphen v. Sutphen*, 30 id. 510, 3 Pac. 100; *A. T. & S. F. Rld. Co. v. English*, 38 id. 110, 16 Pac. 82; *Aiken v. Nogle*, 47 id. 96, 27 Pac. 825; 4 Am. & Eng. Encyc. Law (2d ed.) 888, and cases cited.

Reference is made to *Nichols v. Weaver*, ( 7 Kan. 373,) as an authority against the instruction that was given. It appears, however, that that case was re-viewed upon the findings alone, and there was a spe-cific finding that the marriage contract was not to be performed within one year from the date of making the same. That being true, the case fell fairly within the Statute of Frauds, under the authorities cited, and is entirely unlike the case at bar.

Complaint is made of the refusal to charge the jury that the only contract of marriage was that made in August, 1891. There was testimony given by the plaintiff tending to show that a new contract was made at a later date, and hence the court was not warranted in determining this question for the jury. In fact there was considerable basis for a claim that the letters which were introduced in evidence were sufficient to constitute a written contract of marriage. The jury having found, however, that the only con-tract between the parties was the one made in August,

1891, the refusal of the instruction, even if it had been a proper one, was not error.

The same view disposes of the claim that the jury should have been instructed that the letters written by the defendant did not constitute a note or memorandum of a marriage contract. An examination of the instructions satisfies us that the case was fairly submitted to the jury, and that they furnish no grounds for the criticisms made by the plaintiff in error.

It is contended that error was committed in admitting in evidence the conversation between the parties in which the defendant requested the plaintiff to change her church relations and transfer her membership to the church to which he belonged.

2. That defendant induced plaintiff to leave her church admissible evidence.

We think this was a proper consideration for the jury. It was a circumstance showing the affection she had for him, and as a wound or injury to her affections is an element to be considered in the computation of damages, it was properly admitted.

There are some other objections to rulings upon the testimony, but we find nothing substantial in any of them.

It is finally contended that the special findings and general verdict are inconsistent, and that the award made by the jury was excessive. This complaint is based upon the following findings :

"Do you allow the plaintiff any damages for mental anguish ? Ans. Yes.

"If the jury answer the last question in the affirmative, please state the amount of damages allowed for this injury. A. $1,000.

"Do you allow the plaintiff any damages for the disappointment and humiliation suffered by her by reason of the breach of the marriage contract ? A. Yes.

"If you answer the last question in the affirmative, please state the amount of such damages. A. $1,000."

It is argued that the findings quoted indicate a double amount of damages on account of disappointment and humiliation, and therefore that the court should at least have required a reduction of one thousand dollars in the award made. In our view there is no real conflict in the findings nor any duplication of damages. The jury evidently thought that both questions referred to the same element of damages, and that the mental anguish suffered was due to the humiliation and disappointment resulting from the breach of promise. The court had instructed the jury that no damages could be allowed for mental anguish except the injury to the plaintiff's affections and the mortification resulting from the defendant's refusal to fulfill his promise. With this instruction before them, the jury could hardly have regarded the questions as relating to separate and distinct elements, and the answers indicate that only one thousand dollars was allowed for all mental suffering, including disappointment and humiliation. The findings admit of this interpretation, and the rule is that where findings are susceptible of two interpretations the court will if possible adopt the one which will harmonize with and sustain the general verdict. We think the damages cannot be regarded as excessive; and finding no material error, the judgment of the District Court will be affirmed.

3. Questions construed to sustain verdict.