No. 42,398

THOMAS WADE JARBOE, *Appellant,* v. VELMA ELLEN PINE, *Appellee.*

(366 P. 2d 783)

Opinion filed December 9, 1961.

*Geo. K. Melvin,* of Lawrence, was on the briefs for the appellant.

*Richard A. Barber, John A. Emerson* and *Fred N. Six,* all of Lawrence, were on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover for personal injury and property damage arising from an intersection collision between two automobiles. The jury found the plaintiff guilty of contributory negligence and returned a verdict for the defendant whereupon the trial court entered judgment. Appeal has been duly perfected by the plaintiff from such judgment and the order overruling his motion for a new trial.

The basic question presented is whether the record discloses sufficient evidence to sustain the jury's finding of contributory negligence.

The appellant (plaintiff below) was driving his automobile west on 12th Street in the City of Lawrence, Kansas, and the appellee (defendant below) was driving her automobile north on New York Street, when they collided at an intersection formed by these two streets. They collided at a point approximately 2 feet and 6 inches west of the center line of the intersection in the appellant's lane of traffic. In other words, the collision occurred in the northwest quadrant of the intersection with the appellee's vehicle in the wrong lane of traffic, when it struck the appellant's vehicle (entering the intersection from the right) on the left rear fender. The appellant was in the intersection when the appellee entered. It is not clear from the evidence that the appellee saw the appellant's vehicle before the collision. The appellant testified when he first looked he could see about 50 to 75 feet south and did not see the appellee's automobile; and that he was probably 25 or 30 feet east of the *center* of the intersection when he first looked to the south *and saw the appellee's vehicle* (from the east edge to the center of the intersection is 15 feet). When asked how far south of the center

of the intersection the appellee's vehicle was when he first saw it, he answered:

"Well it would be, that is hard to say, I don't know; anywhere from 50 to 60 feet I suppose."

He further admitted he first saw the appellee's vehicle just as he was entering the intersection. Both drivers testified they were driving approximately 20 miles per hour, and there was no evidence that either of the drivers had applied the brakes. The accident occurred at 10:00 o'clock in the morning on a cloudy day. The street was surfaced with brick and it was dry.

A police officer testified the intersection was one "where you have got to slow down like all intersections, as cars park there whether north, south, west, or east, as cars are always parked there."

A licensed civil engineer, after making a study of the intersection as to the visibility of drivers approaching the intersection from the position of the appellant's vehicle, testified that parked vehicles at the intersection would not affect the visibility in the direction from which the appellee was approaching, and at any point within 50 feet east of the intersection, an automobile approaching from the south could be seen for more than 150 feet.

In answer to special questions the jury found the appellee guilty of negligence which was a proximate cause of the collision, and also found the appellant guilty of negligence which caused or directly contributed to cause the collision in question. In answer to special question No. 4, which asked the jury to state in what way the plaintiff (appellant) was negligent, it said:

"From Instruction No. 9 in that reasonable care was not exercised to avoid a collision. From the evidence presented in the case, the plaintiff did not, after observing the approaching vehicle, make any effort to stop or otherwise indicate his presence through the use of his horn. His effort to swerve was not, in the opinion of this jury, sufficient to constitute reasonable care on his part to avoid a collision."

The first answer the jury gave to this question terminated with the first sentence, but upon request the court required the jury to give a more specific answer, and the additional two sentences were supplied.

By instruction No. 9 the jury was told:

"You are further instructed that it is the duty of users of a public street or highway to look ahead and see whatever there may be within their view which may affect their use of such street or highway and to keep a lookout for other users of such street or highway, and to exercise reasonable care to

avoid a collision with them, and such users of a public street or highway are presumed in law to have seen that which they could have seen had they kept a proper lookout.

"The ordinary and reasonable care required of the users of streets or highways includes a degree of care commensurate with the risk of danger to others by their use of such street or highway."

The appellant specifies that the trial court erred in overruling his motion for a new trial on the following grounds:

"1. Because it was an abuse of discretion so to do under the evidence produced;

"2. Because there was no dispute concerning any pertinent facts;

"3. Because on the facts admitted by all parties and under the instructions of the court, plaintiff was entitled to recover, the only question being how much.

"4. Because there was no evidence upon which the jury could base the findings of contributory negligence as stated in the answers to the special questions."

No complaint was made by the appellant to the exclusion of any evidence, nor does he question any of the court's instructions to the jury.

The appellant concedes these specifications basically go to the same question and argues them together in his brief. It is argued by the appellant that the jury found him guilty of negligence in two particulars *after observing the approaching vehicle of the appellee,* (*a*) in failing to make any effort to stop, or (*b*) otherwise indicate his presence through the use of his horn.

The appellant contends there is absolutely nothing in the record to show that he did not use his horn. The appellant then argues in substance that he had the right of way at the intersection, because he was on the right and had entered the intersection first; that he had passed the middle of the intersection by 2 feet and 8 inches, and had the right to expect that the vehicle which he saw coming from the south, and which did not have the right of way, would at least slow down for the intersection and stop if necessary; and that he had the right to expect the other driver to stay over on her right-hand side of the street. It is argued the appellant had no duty to stop because he had the right to expect that the appellee would use ordinary care and comply with the law in that regard.

G. S. 1959 Supp., 8-5,102, provides, among other things, that a driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn. The applica-

tion of this statute to an automobile negligence action was discussed in *Hubbard v. Allen,* 168 Kan. 695, 215 P. 2d 647. Under the circumstances there presented, and under the statute, it was held that whether it was necessary for the driver of a motor vehicle to sound his horn to insure the safe operation thereof was a question of fact for the jury and not a question of law for the court.

At the trial the appellee testified "I didn't hear any warning or signal of approach from plaintiff's car." In her answer she alleged as a specific act of negligence the failure of the appellant to sound a warning, and the jury in accordance with such issue framed by the pleadings found the failure of the appellant to sound his horn was an act of negligence which caused or directly contributed to the cause of the collision in question. Thus, the jury determined that it was necessary for the appellant to sound his horn to insure the safe operation of his vehicle in the instant situation, and that his failure to do so was contributory negligence under the law of the case.

While the evidence to support such finding is circumstantial in character, it is nevertheless sufficient. No testimony was entered by the appellant that he did sound his horn. The statute (8-5,102, *supra*) requires that a horn on a motor vehicle be audible under normal conditions from a distance of not less than 200 feet. In *Townsend, Administrator v. Jones,* 183 Kan. 543, 553, 331 P. 2d 890, it was said, while negligence cannot be presumed and cannot be founded upon mere conjecture, evidence to overcome the presumption (that a decedent exercised due care for his own safety) may be either direct or circumstantial. (See, also, *Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765.)

The appellant's argument that his failure to sound a warning could not be negligence as a matter of fact or law is without merit on the facts and circumstances presented by this case.

The merit and purpose of a horn on a motor vehicle and the manner in which it should be used at a hazardous highway intersection was recognized in *Green v. Higbee,* 176 Kan. 596, 604, 272 P. 2d 1084.

The jury specifically found the appellant was contributorily negligent in that he failed to make any effort to stop, after he observed the approaching vehicle of the appellee. The investigating officer found no brake marks after the collision, and there was other sufficient evidence from which the jury could find that the appellant did not apply his brakes.

A point overlooked by the appellant is that the jury by its specific answer to question No. 4 found that appellant's contributory negligence also consisted of a failure to exercise reasonable care in accordance with instruction No. 9. This instruction was a "proper lookout" type of instruction. By incorporating this instruction into its special finding the acts referred to as negligence by such instruction were incorporated. Special findings are to be construed liberally with a view to ascertaining the intention of the jury. (*Epple v. Kress & Co.*, 187 Kan. 452, 457, 357 P. 2d 828.)

An effort will be made to review the evidence which supports this finding, and the finding that the appellant failed to make any effort to stop, in the light of instructions given by the trial court, and particularly instruction No. 8, as follows:

"The rights of travellers upon a public street or highway are mutual, and it is the duty of each so to exercise his right of passage as not to cause injury to another having a like right. Each is under obligation to use ordinary care, and each has the right to expect that such care will be exercised by the other and that each party will comply with the law in that regard."

The appellant did not look to the south and ascertain the presence of the appellee's vehicle until he was 25 or 30 feet from the center of the intersection in question. This would place him 10 or 15 feet from the edge of the intersection. Traveling at approximately 20 miles per hour an automobile with good tires and good brakes on a smooth, dry brick surface would require in excess of a total of 44 feet to stop. (See, *Orr v. Hensy*, 158 Kan. 303, 310, 147 P. 2d 749.) The foregoing evidence was supplied either by the appellant or the appellant's witness, a police officer. It is obvious when the appellant first looked to the south and ascertained the appellee's presence, it was too late to enter the intersection with his vehicle under control. His automobile would have been from 14 to 19 feet beyond the center of the intersection before he could have stopped, if his brakes had been simultaneously applied when he first saw the appellee. Therefore, the appellant's first effective glance was destined to be a futile one. He had passed beyond the point of control when he first saw the appellee's vehicle. Contributory negligence is established the instant the driver of a motor vehicle fails to maintain a proper lookout, and it bars him as a plaintiff from recovery. The appellant was bound to use reasonable care to avoid a collision and is presumed in law to have seen that which he could have seen had he kept a proper lookout. (*Brown v. Utili-*

*ties Co.,* 110 Kan. 283, 203 Pac. 907; and Instruction No. 9 which is the law of the case.)

The appellant's argument on appeal is apparently directed to the proposition that the driver of an automobile having the right of way by virtue of his first entry into the intersection, and also being to the right, has an absolute right to proceed as the favored driver. This theory has previously been rejected.

The case of *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851, illustrates that the right of way is not absolute, and that the favored driver has a duty to exercise the same degree of care under the circumstances as does the disfavored driver. There the plaintiff had the right of way by virtue of his first entry. He assumed the right of way would absolve him of his duty to exercise due care. He made no effort to stop before entering the intersection in order to avoid a collision. He said, "'I could have stopped but why should I stop when the right of way was mine.'" The contention did not appeal to the district court or to the Supreme Court. In affirming an order sustaining a demurrer to the plaintiff's evidence, it was held the facts were not such that reasonable minds might draw different conclusions under such circumstances. The case is authority for the proposition that the favored driver has a duty to use reasonable care to avoid injury—that he did not keep a proper lookout and govern his actions by what he must have seen, but proceeded without regard for his own safety.

The driver of a motor vehicle upon a public street or highway, even though he be in law the favored driver, or the driver with the right of way, and even though he has the right to assume others traveling on the public street or highway will comply with the obligation imposed upon them, is not absolved of the consequence of his own independent negligent acts. He is required to regulate his use of the public street or highway by the observance of ordinary care and caution to avoid receiving an injury or inflicting an injury upon another. He has a duty to look ahead and see what there may be within his view which may affect his use of such street or highway and to keep a lookout for other users of such street or highway, and he is in law presumed to have seen and heard that which he could have seen and heard had he kept a proper lookout and exercised ordinary care and caution. His failure to use that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances is negli-

gence as a matter of law. (*Orr v. Hensy,* supra; *Green v. Higbee,* supra; and *Taylor v. Johnson,* 186 Kan. 561, 352 P. 2d 436.)

Facts similar to those presented in the instant case were before the court in *Taylor v. Johnson,* supra. The jury found the plaintiff guilty of contributory negligence. In the opinion it was said:

"While plaintiff was on defendant's right and therefore had the right of way, she could not drive in front of an oncoming car, and had a duty to observe the traffic approaching the intersection." (p. 563.)

The court in commenting upon an answer to a special question which found the plaintiff guilty of contributory negligence stated:

". . . In fact, under the evidence it would seem that the jury was of the opinion that plaintiff was not keeping an adequate watch for automobiles approaching the intersection at a time when she could easily have seen the defendant and ascertain from his actions that he could not stop his car. She frankly testified that she did not see the defendant until about the time she herself entered the intersection. . . ." (p. 562.)

There a motion for judgment notwithstanding the general verdict was sustained by reason of the specific finding of contributory negligence and was affirmed on appeal.

Having dispelled the appellant's assignment of error, that there was no evidence upon which the jury could base the findings of contributory negligence as stated in the answers to the special questions, and finding the general verdict for the appellee and the judgment entered thereon by the trial court consistent with the special findings of contributory negligence, it cannot be said the order denying the motion for a new trial was an abuse of discretion by the trial court. (*Clark v. Southwestern Greyhound Lines,* 146 Kan. 115, 69 P. 2d 20, and authorities cited therein; and *Angell v. Hester,* 186 Kan. 43, 348 P. 2d 1050.)

The judgment is affirmed.

WERTZ and ROBB, JJ., concur in the result.